# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DAVID HERGENREDER,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    *Defendant.*

Case No. 14-1007-EFM

## MEMORANDUM AND ORDER

Plaintiff David Hergenreder seeks review of a final decision by Defendant Carolyn Colvin, the Commissioner of Social Security, denying his application for supplemental security income under Title XVI of the Social Security Act. Hergenreder alleges that the Commissioner's decision should be reversed and remanded because the administrative law judge ("ALJ") misapplied the Medical-Vocational Guidelines. Specifically, Hergenreder alleges that the ALJ undervalued his limitations, his age, and the testimony of the vocational expert. In the final analysis, Hergenreder claims that these discrete errors cumulatively enabled the ALJ to skirt the Medical-Vocational Guideline's directive that a 50-year-old, high school graduate limited to unskilled, sedentary work be considered disabled. Upon review, the Court is unable to find that substantial evidence supports the ALJ's step five conclusion. As such, the Court reverses the Commissioner's decision and remands the case for further proceedings.

### I. Factual and Procedural Background

David Hergenreder was born on August 28, 1962. Hergenreder alleges that his disability began May 15, 2009. The agency denied Hergenreder's application initially and on reconsideration. Hergenreder then asked for a hearing before an ALJ.

ALJ Jennifer Horne held a hearing on November 28, 2012. At that hearing, Hergenreder testified about his alleged medical conditions, including degenerative disc disease of the lumbar spine and cervical spine, neuropathy, social anxiety, panic disorder, and avoidant personality disorder. A vocational expert ("VE") also testified as to Hergenreder's employment prospects. Considering the conditions described by the ALJ to hypothetically represent the limitations of Hergenreder's impairments, the VE stated that Hergenreder "[could not] do a light exertional level of job." But the VE did identify certain sedentary, unskilled work that Hergenreder could perform. The ALJ did not ask the VE to explain the unavailability of light exertional work.

The ALJ issued her written opinion on December 21, 2012. At step one of the evaluation process, she found that Hergenreder had not engaged in substantial gainful activity since the date Hergenreder applied for benefits. At step two, she determined that Hergenreder's severe impairments include degenerative disc disease of the lumbar spine and scoliosis, social anxiety, and panic disorder with mild agoraphobic elements. At step three, she found that Hergenreder's impairments do not meet or medically equal the disability impairment criteria. She then estimated that Hergenreder's functional abilities enable him to perform light work with certain physical and social limitations. At steps four and five, she determined that, having no past relevant work, work appropriate to Hergenreder's functional abilities still existed in significant numbers in the national economy. The ALJ therefore concluded that Hergenreder had not been under disability since the date his application was filed.

The Social Security Administration's Appeals Council denied Hergenreder's request for review in November 2013. Hergenreder timely requested judicial review. He seeks reversal of the ALJ's decision and either a grant of benefits or remand to the Commissioner for a new administrative hearing. Because Hergenreder exhausted all administrative remedies available to him, the Commissioner's decision denying Hergenreder's application for benefits is now final and the Court has jurisdiction to review the decision.

## II.     Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act").[1] The Act provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."[2] The Court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.[3] "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion."[4] The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]."[5]

An individual is under a disability only if he can "establish that [he] has a physical or mental impairment which prevents [him] from engaging in substantial gainful activity and is

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[4] *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[5] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

expected to result in death or to last for a continuous period of at least twelve months."[6]  This impairment "must be severe enough that [he] is unable to perform [his] past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering [his] age, education, and work experience."[7]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[8]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[9]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those severe impairments meets or equals a designated list of impairments.[10]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity ("RFC"), which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[11]

---

[6] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[7] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002)).

[8] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 416.920(a).

[9] *Barkley*, 2010 WL 3001753, at *2.

[10] *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

[11] *Barkley*, 2010 WL 3001753, at *2; *see also* 20 C.F.R. §§ 416.920(e), 416.945.

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five. These steps required the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national economy, respectively.[12] The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[13] The burden then shifts to the Commissioner at step five to show that, despite his alleged impairments, the claimant can perform other gainful work in the national economy.[14]

### III. Analysis

Hergenreder argues that the ALJ misapplied the Medical-Vocational Guidelines ("grid rules"). Specifically, he believes that the ALJ used the incorrect RFC and age categories. He argues that the ALJ should have found him capable of sedentary work only, not light work with additional limitations. According to Hergenreder, substantial evidence confirms that he genuinely experiences disabling pain—pain so limiting that, considered with the VE's testimony, it proves that he can perform only sedentary work. Hergenreder also argues that the ALJ's decision fails to account for his transition between age categories during the pendency of the ALJ's proceedings. Had the ALJ determined Hergenreder to be capable of performing only sedentary work and within the 50-year-old age category, the grid rules would have directed a finding of disabled.[15]

---

[12] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[13] *Lax*, 489 F.3d at 1084.

[14] *Id.*

[15] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.12.

The Commissioner responds that substantial evidence supports the ALJ's assessment of Hergenreder's pain and remaining ability to work. Considering that allegedly proper assessment, the Commissioner further responds that the ALJ correctly used the grid rules as a non-determinative framework to guide her decision. Because the VE identified sedentary work purportedly available to someone with Hergenreder's exertional and nonexertional limitations, the Commissioner ultimately argues that substantial evidence supports the ALJ's denial of Hergenreder's supplemental security income request.

**A. Substantial Evidence Supports the ALJ's RFC Determination**

The parties' dispute initially obligates the Court to consider whether the ALJ's RFC determination is supported by substantial evidence. Residual functional capacity considers the claimant's physical, mental, and other impairments (such as pain) to ultimately measure the most a claimant can still do on a sustained basis despite his limitations.[16] The ALJ found that Hergenreder has the RFC to perform light work with additional, nonexertional limitations.[17] Specifically, the ALJ qualified Hergenreder's ability to perform light work with the condition that such work be "limited to occasional overhead reaching with bilateral upper extremities;" allow Hergenreder "to change positions between sitting and standing every 45–60 minutes;" require only "occasional climbing [of] ramps, stairs, ladders, ropes and scaffolds as well as occasional stopping, crouching and crawling;" and occur in an environment from "temperature and humidity extremes, or any irritants, such as gases, fumes, chemicals." Considering

---

[16] 20 C.F.R. § 416.945(a)(1).

[17] The regulations distinguish exertional and nonexertional limitations. "Limitations are classified as exertional if they affect [the claimant's] ability to meet the strength demands of jobs. . . . Limitations or restrictions which affect [the claimant's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 416.969a. Considering those limitations, the ALJ assigns the claimant to a particular category of work. Work is classified as sedentary, light, medium, heavy, or very heavy depending on the work's physical exertion requirements. 20 C.F.R. § 416.967.

Hergenreder's professed pain, the ALJ finally qualified Hergenreder's light work capacity "to simple, repetitive, routine, unskilled work" that involves "no contact with the public and occasional contact with co-workers and supervisors."

### 1. The ALJ Properly Weighed Hergenreder's Credibility

Hergenreder first argues that the ALJ overestimated his ability to work because the ALJ erroneously discounted his reports that he routinely experiences disabling pain and anxiety. But Hergenreder does not specifically explain how accepting his reports would alter the ALJ's decision. Presumably, Hergenreder believes that such evidence would prove that he had the RFC to perform only certain sedentary work.[18]

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits,"[19] courts generally treat an ALJ's credibility determinations as binding on review.[20] As the Court considers the ALJ's credibility determination, it is mindful of two opposing principles. "On one hand, '[c]redibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.' "[21] "On the other hand, 'findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' "[22] Ultimately,

---

[18] Elsewhere in his arguments to the Court, Hergenreder contends that the ALJ erred in failing to apply the grid rule for sedentary work.

[19] *Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1250 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

[20] *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990).

[21] *Madron v. Astrue*, 311 F. App'x 170, 175–76 (10th Cir. 2009) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

[22] *Id.* (quoting *Kepler*, 68 F.3d at 391).

the Court cannot displace the ALJ's choice between two well-supported and fairly conflicting views, even though the Court may have justifiably made a different choice.[23]

Social Security Ruling 96-7P describes a two-step process for evaluating a claimant's reports of his own symptoms. First, the ALJ must consider whether a reasonable person could expect the alleged symptoms to result from the claimant's medically determinable impairment(s). If so, the ALJ's second task is to "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."[24] Factors that may be relevant in assessing the claimant's testimony include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgement of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence.[25]

Applying these rules, the ALJ determined "that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The parties argue that the ALJ erred only at the second step of the SSR 96-7P evaluation process. They agree that objective medical evidence establishes that Hergenreder's degenerative disc disease, scoliosis, social anxiety, and panic disorder with mild agoraphobic elements are impairments reasonably expected to cause the sort of pain or anxiety he reports.

---

[23] *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007).

[24] Soc. Sec. Rul. 96-7P, 1996 WL 374186, at *2 (Soc. Sec. Admin. July 2, 1996).

[25] *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation marks and citation omitted).

They dispute, however, whether he credibly states the degree of his pain and anxiety. More specifically, they dispute whether the balance of the evidence shows that Hergenreder's pain and anxiety are so disabling that it limits him to sedentary rather than light work.

Hergenreder argues that the ALJ failed to provide sufficient reasons for disregarding his reported symptom-based limitations. Hergenreder emphasizes his testimony at the November 28, 2012 ALJ hearing. At that hearing, Hergenreder explained that he considers himself mentally and physically unfit to work. Mentally, he reported "a tendency to withdraw" accompanied by panic attacks. Physically, he described "a lot of pain" in his neck and lumbar spine, as well as "significantly" worsening weakness in his legs. Hergenreder rated his back pain as "about the same" or, perhaps, "a little worse" than the pain he experienced at the time that his prior application for benefits was denied. He considered his neck pain worse, however, and noted that he sometimes cannot rotate his neck. He reported that medication for his condition helps "[t]o a certain extent." Consistent with Hergenreder's testimony, Hergenreder's medical records consistently document reports of back and neck pain.

At the ALJ hearing, Hergenreder also estimated his functional abilities to sit, stand, walk, and lift. He predicted that he is able to sit approximately 30 minutes at a time, perhaps longer or shorter depending on the firmness of the seat. He predicted that he is able to stand about 15 minutes before suffering "excruciating" pain in his pelvis, hip socket, and femur. He predicted that he is able to walk about 15 minutes before experiencing bad pain in his lower back and chest. Finally, he predicted that he can lift only five to ten pounds.

The ALJ "considered but granted little probative weight to [Hergenreder's] testimony." The ALJ reasoned that substantial evidence in the record contradicted Hergenreder's reports. Considering Hergenreder's medical records, the ALJ explained:

> While the claimant testified that he is unable to work due to pain, the treatment record shows that his pain medications control his pain and he functions well with them. Also, he declined the physical therapy treatment. Further, the claimant's statements that his back pain increases . . . 4-5 times a month and it takes weeks for his back to improve are not supported by his longitudinal treatment history. Overall, the claimant has very sparse medical history that would not be expected for someone in severe pain. Additionally, his testimony about his limited functional abilities to sit, stand, walk and lift is not supported by the objective medical findings. Moreover, the claimant testified about inability to work due to mental problems. However, the record shows that he declined the psychotherapy and stopped taking Celexa. The claimant has purposely adapted to a low-stress lifestyle, such as staying home and taking medications, to lessen his anxiety symptoms and consequently, he has avoided the prescribed mental treatment. Notably, the claimant has consistently demonstrated essentially normal findings on mental status exams. These discrepancies and inconsistencies do not support the claimant's ultimate allegation of disability.

The medical records cited by the ALJ do not document any strength or range of motion deficits. In fact, where discussed, the records asses Hergenreder's strength, range of motion, reflexes, gait, and station all to be within normal limits. And while the records routinely reference chronic pain, treatment notes also frequently describe Hergenreder as "doing well" or "functioning" on medications. An April 2012 treatment record even notes that "[i]n regards to his back pain, [Hergenreder has] not had any changes or worsening." Similarly, despite regular treatment and reports of depression, psychiatric evaluations contained in the medical records consistently report relatively normal findings. Importantly, none of the records from Hergenreder's physicians observe or report that Hergenreder's pain or other symptoms temporarily incapacitate him or otherwise substantially limit his ability to undertake activities of daily living.

Elsewhere in her RFC assessment, the ALJ discussed the function reports and consultative exams. The ALJ gave "significant weight" to the function reports completed by Hergenreder's mother. The most recent of those reports explains that, without encouragement or assistance, Hergenreder is able to perform minor, indoor household tasks (laundry, cleaning,

vacuuming, dusting, and meal preparation). All of the function reports also reveal that Hergenreder undertakes weekly walks to the nearby grocery store. After reviewing the entire record, medical consultants opined that Hergenreder is capable of light work with additional postural and manipulative limitations. After examining Hergenreder, a consultative psychological evaluator opined that Hergenreder "is capable of understanding and remembering simple to intermediate instructions[;] capable of sustained concentration persistence and pace in a work setting. . . . [;] has the ability to relate adequately to supervisors," but "is socially anxious and will be at his best with minimal social interaction." The ALJ discussed the consultants' opinions, gave "significant weight" to each, and adopted the recommended physical and social limitations.

Considering the function reports, opinion evidence, and available treatment records, the ALJ concluded that the record fails to substantiate the work-preclusive degree of pain and anxiety that Hergenreder alleges. Based on a review of the record, the Court determines that the ALJ articulated specific reasons for finding Hergenreder's reports of disabling symptoms not fully credible. Because the ALJ linked her discussion to substantial evidence in the record, the Court will not disturb the ALJ's conclusions for lack of evidence.[26] Even considering Hergenreder's testimony, therefore, substantial evidence supports the ALJ's assessment of Hergenreder's credibility and RFC.[27]

---

[26] Hergenreder also argues that the ALJ inappropriately discredited him for failing to follow all prescribed treatment. Even assuming (without deciding) that Hergenreder is correct, the Court considers the ALJ's conclusions adequately supported. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162–63 (10th Cir. 2012) (noting that giving greater weight to an opinion would not have helped the claimant and thus the ALJ's alleged error did not prejudice the plaintiff). That is, even assuming that Hergenreder justifiably refused to undergo physical and psychiatric therapy, the ALJ still relied on substantial evidence in the record to conclude that Hergenreder's pain and anxiety do not preclude him from performing limited light work.

[27] *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996)) (explaining that a proper residual functional capacity assessment

## 2. The VE's Testimony Does Not Alter the Validity of the ALJ's RFC Analysis

Hergenreder next argues that the VE's testimony proves that the ALJ incorrectly assessed Hergenreder capable of limited light work. The VE testified that a hypothetical individual with Hergenreder's alleged characteristics could not perform light work existing in the national economy, only certain sedentary jobs. Hergenreder characterizes this testimony as evidence that "the ALJ's RFC is for sedentary work, not light work." The Commissioner responds that the regulations charge the ALJ, not the VE, with the responsibility to assess a claimant's RFC.

The Commissioner is right.[28] In the five-step analysis,

> [t]he RFC is based on the claimant's particular disabilities, an inquiry wholly independent from what jobs are available in the regional and national economy. The VE does not testify as to what the claimant is physically capable of doing, but rather as to what jobs are available, given the claimant's physical capabilities.[29]

Thus, the ALJ determines the RFC and, relying on the ALJ's determination, the VE considers whether jobs exist for a person with that RFC, age, education, and work experience. While the VE testimony (if accurate) is evidence that Hergenreder's occupational base is significantly eroded,[30] it is evidence only as to what jobs are available, given Hergenreder's impairments.

---

"include[s] a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). For the reasons already discussed, the ALJ's residual functional capacity analysis appropriately supports her conclusion that Hergenreder is not limited to sedentary work.

[28] *See* 20 C.F.R. § 416.946(c) ("If your case is at the administrative law judge hearing level . . . , the administrative law judge . . . is responsible for assessing your residual functional capacity."); *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000) (citing 20 C.F.R. § 416.946 as contradicting the argument "that the VE is somehow responsible for determining a claimant's exertional level").

[29] *Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 36 (6th Cir. 2010); *see also*, *Carrithers v. Astrue*, 2011 WL 5984721, at *3–4 (D. Colo. Nov. 30, 2011) (approving *Anderson* to reject position that ALJ *must* find claimant with a light RFC disabled under the grid rules if the VE identifies only sedentary jobs).

[30] *See* Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2 (Soc. Sec. Admin. 1983) (explaining that vocational experts may testify for the purpose of clarifying the extent of erosion of the occupational base).

Accordingly, the VE's testimony at step five is inadequate to alter the ALJ's RFC determination between steps three and four.

**B. Substantial Evidence Does Not Support the ALJ's Step Five Conclusion**

Finally, Hergenreder argues that the ALJ misapplied the grid rules at step five given the VE's testimony and Hergenreder's age at the time of the decision. As discussed, the VE's testimony did not require the ALJ to reduce Hergenreder's RFC so as to require consideration of the sedentary grid rules only. But Hergenreder appropriately challenges the ALJ's use of the VE's testimony, because the Court cannot say that the ALJ appropriately relied on the VE's testimony in applying the grid rules to conclude that Hergenreder is not disabled.

At step five, the Commissioner, not Hergenreder, was required to prove that, despite Hergenreder's impairments, Hergenreder can perform meaningful work in the national economy.[31] To meet this burden and determine the availability of substantial gainful activity, the Commissioner may rely on the grid rules.[32] The grid rules contain tables of rules which use the claimant's RFC, age, education, and work experience (together, the claimant's "vocational profile") to predict the availability of suitable work and, under appropriate circumstances, direct a determination of disabled or not disabled.[33] If the claimant's vocational profile coincides perfectly with the corresponding criterion of a grid rule, that rule directs a mandatory finding.[34] If the claimant's vocational profile even slightly deviates from the criterion of the corresponding grid rule, however, the grid rules become advisory and "full consideration must be given to all of

---

[31] 20 C.F.R. § 416.960(c)(2); *Lax*, 489 F.3d at 1084.

[32] 20 C.F.R. § 416.969; *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[33] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 200.00(a); *Welch v. Astrue*, 2010 WL 5288205, at *3 (D. Kan. Dec. 15, 2010) (citing *Thompson*, 987 F.2d at 1487).

[34] 20 C.F.R. § 416.969; 20 C.F.R. Part 404, Subpt. P, App. 2, Sec. 200.00(a).

the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations."[35]

Here, the Court is unable to approve the ALJ's application of the grid rules.

As discussed above, the ALJ correctly determined that additional, nonexertional limitations impede Hergenreder's "ability to perform all or substantially all of the requirements of th[e full range of light] work." Temporarily ignoring those nonexertional limitations as required, the ALJ found no grid rule corresponding to Hergenreder's supposed vocational profile that directed a finding of disabled.[36] The ALJ then appropriately recognized that under these circumstances she must consider "the extent to which [Hergenreder's additional] limitations erode the unskilled light occupational base" and use the grid rules as a "framework for decisionmaking."[37] If based on an accurate hypothetical, the VE's testimony that Hergenreder cannot perform any available light work is substantial evidence that Hergenreder's light exertional occupational base is completely eroded.[38] At that point, the ALJ's task was to ascertain to what, if any, degree Hergenreder's sedentary occupational base remains and, even if any, whether the sedentary grid provides a more appropriate framework for measuring Hergenreder's occupational prospects.

---

[35] 20 C.F.R. Part 404, Subpt. P, App. 2, Sec. 200.00(a); *see also* 20 C.F.R. § 416.969.

[36] The ALJ applied the grid rules corresponding to a claimant with a light work RFC, a high school education, an ability to speak English, no transferrable job skills, and Hergenreder's age (both at the time of filing his claim and at the time of the ALJ's decision). *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Rules 202.13, 202.20.

[37] ALJ Decision, Doc. 9-3, p. 23; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2, Sec. 200.00(e)(2); Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2 (Soc. Sec. Admin. 1983).

[38] *See* Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2 (Soc. Sec. Admin. 1983) (explaining that vocational experts may testify for the purpose of clarifying the extent of erosion of the occupational base); *Mendez v. Colvin*, 598 F. App'x 776, 784 (10th Cir. 2014) (finding that ALJ properly relied on VE's testimony that claimant's sedentary occupational base was not so eroded as to preclude claimant from all sedentary work).

Considering whether the sedentary grid rules more accurately represent Hergenreder's employability was especially important in this case. In this case, Hergenreder transitioned between age categories during the pendency of his claim. As a 48 year-old at the time that he filed his claim, Hergenreder belonged to the "younger person" age category.[39] Before the hearing and the ALJ's decision, however, Hergenreder turned 50 years old and joined the "person closely approaching advanced age" category.[40] The ALJ appears to have been aware of these facts, identifying Hergenreder by his age at both the time of her decision and at the time that he originally filed his claim. The ALJ even considered the light work grid rules corresponding to both potential age categories. But the ALJ never identified precisely to which category Hergenreder belonged. And considering that the grid rules for the light work category direct a finding of not disabled for both possible age categories, the ALJ may have believed the age category determination unimportant.

But the grid rules for the light work category were not the only grid rules to consider. Under the circumstances, it was appropriate to consider the corresponding sedentary grid rules, specifically the rule concerning a "person closely approaching advanced age."[41] That sedentary grid rule directs a finding of disabled, unlike the light grid rules that the ALJ referenced.[42] If a claimant's exertional capacity "falls between two [grid] rules which direct opposite conclusions, i.e. 'Not disabled' at the higher exertional level and 'Disabled' at the lower exertional level," the rules advise that an exertional capacity "significantly reduced in terms of the regulatory

---

[39] *See* 20 C.F.R. § 416.963(c) (defining "younger person" to include individuals under age 50).

[40] *See* 20 C.F.R. § 416.963(d) (defining "person closely approaching advanced age" to include ages 50–54).

[41] *See* Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2–3 (Soc. Sec. Admin. 1983) (advising "equitable consideration" of lower and upper exertional grid rules when the individual's RFC falls between exertional levels).

[42] *Compare* 20 C.F.R. Part 404, Subpt. P, App. 2, Rules 202.13, 202.20, *with* 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.27.

definition . . . could indicate little more than the occupational base for the lower rule and could justify a finding of 'Disabled.' "[43]

Moreover, identifying the claimant's relevant age is a fact determination that must be supported by substantial evidence.[44] The ALJ must use each of the age categories that apply to the claimant during the relevant period.[45] "The different age categories have distinct consequences."[46] The oldest age that the ALJ must consider is the claimant's age at the date last insured.[47] At no point did the ALJ discuss the significance of Hergenreder's transition between age categories.[48] At no point did the ALJ relate discussion of Hergenreder's age to evidence concerning Hergenreder's insured status. Consequently, even if the Court found that the ALJ placed Hergenreder in a single age category, the Court is ill-equipped to judge the correctness of that placement. Because the ALJ did not make an unambiguous finding as to the significance of Hergenreder's transition between age categories, the Court is unable to overlook the ALJ's inattention to the sedentary grid rule corresponding to Hergenreder's age at the time of her decision.[49]

---

[43] Soc. Sec. Rul. 83-12, 1983 WL 31253, at *2 (Soc. Sec. Admin. 1983).

[44] *See Ediger v. Astrue*, 2012 WL 10352, at *5 (D. Kan. Jan. 3, 2012) (citing *Daniels v. Apfel*, 154 F.3d 1129, 1136 n.5 (10th Cir. 1998)) ("Like any factual issue, a finding regarding the appropriate age category in which to place the claimant must be supported by substantial evidence.").

[45] 20 C.F.R. § 416.963(b).

[46] *Byers*, 506 F. App'x at 790.

[47] Soc. Sec. Rul. 83-10, 1983 WL 31251, at *8 (Soc. Sec. Admin. 1983).

[48] *See Cox v. Apfel*, 1998 WL 864118, at *4 (10th Cir. 1998) ("because plaintiff was within six months of the next age category . . . at the time the ALJ issued his decision, he erred by not addressing whether plaintiff was of borderline age before choosing a rule from the grids.").

[49] *See Byers*, 506 F. App'x at 791 ("a remand is in order because we cannot tell whether the ALJ would have reached the same result by considering that Byers was five-and-a-half months short of advanced age.").

So what does this mean? As determined by the ALJ, Hergenreder's RFC falls between two exertional levels: light and sedentary. Each exertional level represents a category of potential occupations. And, according to the grid rules, the availability of those potential occupations increases or decreases based on the claimant's age, education, and work history.[50] While the ALJ considered the light exertional level grid rules, she did not discuss the lower exertional level grid rule corresponding to Hergenreder's age at the time of her decision. Considering that the VE's testimony ruled out all potential light work occupations, the light grid rules offer no meaningful guidance as to Hergenreder's employment prospects. Considering Hergenreder's age at the time of the decision, moreover, the "younger individual" age category grid rules potentially offer no meaningful guidance as to Hergenreder's employment prospects.[51]

That leaves two evidentiary means to support the ALJ's decision: the guidance of the relevant sedentary grid rules or proper VE testimony that sedentary work exists for Hergenreder. Neither appears in the ALJ's decision. Because Hergenreder must alternate between sitting and standing approximately every hour, he cannot perform a full range of sedentary work.[52] "In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted

---

[50] *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Sec. 200.00(b) ("The existence of jobs in the national economy is reflected in the 'Decisions' shown in the rules . . . . Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established.").

[51] *Compare* 20 C.F.R § 416.963(c) (explaining that the age of a "younger person" generally "will [not] seriously affect [that person's] ability to adjust to other work."), *with* 20 C.F.R § 416.963(d) (explaining that, along with a severe impairment and limited work experience, the age of a "person closely approaching advanced age" "may seriously affect [that person's] ability to adjust to other work."), *and* 20 C.F.R. Part 404, Subpt. P, App. 2, Sec. 201.00(g).

[52] *See* 20 C.F.R. § 416.967(a) (defining sedentary work to generally involve sitting and only occasionally walking or standing); Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5 (Soc. Sec. Admin. 1983) (defining "occasionally" in the context of sedentary work to effectively mean that "sitting should generally total approximately 6 hours of an 8-hour workday.").

to clarify the implications for the occupational base."[53]  The VE's testimony about Hergenreder thus assumed a critical evidentiary role in proving Hergenreder's ability to perform sedentary work despite his postural limitations.  But even assuming that Hergenreder could perform a full range of sedentary work, the sedentary grid rule for his age, education, and work history would advise a finding of disabled.[54]  The Court is aware of nonbinding authority that would consider such circumstances sufficient to find the claimant disabled.[55]  And certainly, absent proper VE testimony that Hergenreder can perform available sedentary work, that grid rule offers the only evidence that the ALJ can rely on at step five—meaning: the only evidence that would be available to the ALJ shows that Hergenreder cannot perform meaningful work in the national economy.

But the ALJ received and relied on the VE's testimony that Hergenreder can undertake certain sedentary, unskilled jobs.  Indeed, the only evidence supporting the ALJ's conclusion at step five that Hergenreder is not disabled is the VE's testimony.  Because the Court cannot ascertain whether the VE's testimony responds to an accurate hypothetical, however, that

---

[53] Soc. Sec. Rul. 83-12, 1983 WL 31253, at *4 (Soc. Sec. Admin. 1983) (discussing, also, that an individual that must alternate between periods of sitting and standing "is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work.").

[54] *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Rule 201.27.

[55] *See Paschall v. Chater*, 1996 WL 477575, *2 (10th Cir. Aug. 23, 1996) (unpublished) ("Because plaintiff's ability to perform sedentary jobs is 'immaterial given his age, education, and work experience,' the VE's testimony about available sedentary jobs does not support a finding that plaintiff is not disabled."); *Welch*, 2010 WL 5288205, at *3–6 ("The facts of the case . . . are nearly identical to . . . *Paschall*.").  This authority is not addressed by the parties and has been disregarded by other courts.  *See Carrithers*, 2011 WL 5984721 (discussing Sixth Circuit's rejection of *Paschall*'s reasoning).  Because the ALJ did not make her discussion with the VE or her ultimate decision unambiguous as to Hergenreder's age, however, the record here fails to present the requisite facts implicating *Paschall*'s nonbinding analysis.

testimony is inadequate evidence to support the ALJ's conclusion.[56] Specifically, the Court cannot say, from a review of the hearing, which age category the VE considered in providing his testimony. The ALJ asked the VE to "assume an individual of the claimant's age;" she never identified, however, whether the VE should consider Hergenreder's age at time of the filing of his claim or at the time of the hearing. It may very well be that the VE considered the appropriate age.[57] It may very well be that Hergenreder's status as a "person closely approaching advanced age" would not alter the VE's opinion. But the law deems the consideration important and requires an accurate hypothetical.[58] Considering those rules and Hergenreder's transition between age categories, the ALJ should have asked a more particular question. Without evidence that the VE's testimony relates with precision to Hergenreder's exact vocational profile, the Court is unable to accept that testimony as substantial evidence.[59] Accordingly, the ALJ erred in relying on the VE's testimony to conclude that Hergenreder is not disabled.

The Court reverses the Commissioner's decision and remands the case. On remand, the Commissioner must properly reevaluate whether Hergenreder can perform gainful work that exists in significant numbers in the national economy. That evaluation will require new VE testimony. That testimony must respond to Hergenreder's exact vocational profile at the time of

---

[56] *Sitsler v. Astrue*, 410 F. App'x 112, 120 (10th Cir. 2011) (citing *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)) ("a proper hypothetical question relating with precision [to] all of the claimant's impairments is required in order for a VE's testimony to constitute substantial evidence to support the decision.").

[57] As discussed above, however, the Court cannot determine from the ALJ's ambiguous decision which age category was most appropriate. But even if the ALJ appropriately considered both age categories, she ought to have asked the VE two separate hypotheticals—one for each potential age category.

[58] *See* 20 C.F.R. §§ 416.960, 416.963(c); *Sitsler*, 410 F. App'x at 120.

[59] *Sitsler*, 410 F. App'x at 120 n.4 ("If the reviewing court cannot meaningfully review the proceedings below, then it is forced to find that the record does not contain substantial evidence supporting the ALJ's decision.").

the ALJ's prior decision, particularly accounting for Hergenreder's transition between age categories.  If the VE fails to identify available work, the ALJ must follow the relevant grid rule's recommendation.  Anything less will fail to give "full consideration . . . to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations."[60]

**IT IS THEREFORE ORDERED** that, according to 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

Dated this 23rd day of September, 2015.

*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[60] 20 C.F.R. Part 404, Subpt. P, App. 2, Sec. 200.00(a).